UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                :
GUIDEONE SPECIALTY MUTUAL                        :
INSURANCE COMPANY,                               :
                                                :          <u>MEMORANDUM AND ORDER</u>
                                    Plaintiff,   :
                                                :
              - against -                        :
                                                :
CONGREGATION ADAS YEREIM, DELI                   :          1:04-cv-5300 (ENV)(JO)
PLUS, INC., LUTHERAN MEDICAL CENTER,             :
JOHN WERDYKER, RUCHEL HESCHEL,                   :
individually and as Administratrix of the Estate of :
Sysche M. Heschel,                               :
                                                :
                                    Defendants.  :
                                                :
------------------------------------------------------------X

VITALIANO, D.J.

        Plaintiff GuideOne Specialty Mutual Insurance Company ("GuideOne") brought this

action for declaratory judgment, pursuant to 28 U.S.C. §§ 1332 and 2201, on December 6, 2004,

seeking relief from insurance contracts it had entered into with defendant Congregation Adas

Yereim ("Adas Yereim").  The original complaint sought to disclaim coverage for any liability

attributable to Adas Yereim stemming from a December 14, 2003 accident (the "accident").  The

disclaimer was grounded upon the insured's alleged breach of the cooperation clauses in the

contracts.  On May 27, 2005, GuideOne amended its complaint to disclaim coverage on the

additional ground that Adas Yereim had failed to disclose during the insurance application

process a leasing arrangement the congregation had with Deli Plus, Inc. ("Deli Plus").  Seven

months later, GuideOne amended its complaint again, on December 9, 2005, now asking the

Court, alternatively, to declare Adas Yereim's insurance policies void *ab initio* because of the

same alleged failure to disclose in the application process.  Pursuant to Rule 56 of the Federal

1

Rules of Civil Procedure, GuideOne has moved for summary judgment in the form of an order either granting a disclaimer of coverage for the accident or rescission. Defendants Adas Yereim, Ruchel Heschel, Deli Plus and John Werdyker have opposed GuideOne's motion and have filed cross-motions for summary judgment on the counterclaim of Adas Yereim seeking a declaration establishing GuideOne's coverage obligations for the accident. Adas Yereim also seeks summary dismissal of the complaint. Defendant Lutheran Medical Center ("Lutheran Medical") has neither opposed GuideOne's motion, nor filed its own motion for summary judgment. For the reasons set forth below, GuideOne's motion is denied and the defendants' cross-motions are granted. Since dueling summary judgment motions have been filed and the interests of Lutheran Medical are aligned with those of the other defendants, the Court will exercise its authority to search the record, see First Fin. Ins. Co. v. AllState Interior Demolition Corp., 193 F.3d 109, 114-115 (2d Cir. 1993), and grant summary relief in favor of nonmoving defendant Lutheran Medical as well.

## BACKGROUND

Adas Yereim is the spiritual and cultural center of an Orthodox Jewish community whose members reside primarily in the Williamsburg and Boro Park sections of Brooklyn. Adas Yereim is comprised of various service entities, including synagogues, religious schools, nursing and rehabilitation facilities, as well as summer camps. The main Adas Yereim synagogue is located in Williamsburg, and a second facility is located at 1350-1358 50th Street ("50th Street") in Boro Park. The 50th Street facility houses a synagogue and religious school. It also houses a social hall, known as "Adas Terrace", which occupies approximately 2400 square feet and is accessible through its own side entrance.

In the mid-1990s, elders of the 50th Street synagogue entered into a "verbal understanding" with a caterer, Deli Plus, which granted the caterer the exclusive right to book and cater functions at Adas Terrace. Deli Plus was fully responsible for booking, organizing, and catering parties and was not required to seek approval for or to give notice of any booking. Many of these social events were attended only by guests unaffiliated with Adas Yereim. Deli Plus had its own keys to Adas Terrace and was responsible for cleaning and kitchen maintenance. In exchange for use of Adas Terrace, Deli Plus paid between $20,000 and $24,000 annually to the 50th Street synagogue.

II.     *Adas Yereim's Insurance Application Process*

During the relevant time period, Israel A. Framovitz ("Framovitz"), who had been Adas Yereim's secretary-treasurer since the early 1980s, was responsible for procuring the congregation's commercial general liability ("CGL") and umbrella ("UMB") insurance policies. He was a congregant of Adas Yereim's main Williamsburg synagogue. In July 2001, Framovitz met with Zev Goldstein ("Goldstein"), an insurance broker and independent GuideOne agent who specialized in selling insurance policies to churches, synagogues, and schools, about obtaining coverage for the Adas Yereim facilities. As part of this process, Framovitz claims that Goldstein asked for a copy of Adas Yereim's then-current insurance policy with another company, advising that he would make any necessary inspections before returning with a quote for coverage. Framovitz alleges that Goldstein assumed full responsibility for completing the insurance application and necessary paperwork, as well as inspecting Adas Yereim's facilities. Goldstein denies responsibility for conducting such inspections, but admits that he completed the necessary forms and avers he did so based on responses from Framowitz to his requests. See Goldstein Aff., Jun. 7, 2006, ¶ 11.

Although lacking specific questions concerning catering operations or social events, the CGL policy application did provide a space labeled "nature of business/description of operation by premise(s)." In this space, the Adas Yereim application listed "School and Camp Operation" for the 50th Street location. An attached schedule to the application describes the 50th Street facility as an elementary school.[1] Against Goldstein's contrary recollection, Framovitz claims that Goldstein never specifically asked him about the type of operations that took place at each of Adas Yereim's facilities. On the other hand, Goldstein admits he never asked specific questions about a catering operation, though he insists that he did ask Framowitz about any social functions Adas Yereim may have intended to hold. In turn, while claiming that he did not know the specifics of the arrangement with Deli Plus,[2] Framovitz admits that he never volunteered any information about the catering operation at 50th Street during his meeting with Goldstein. What is clear, however, is that both sides agree Goldstein did not learn of Adas Yereim's arrangement with Deli Plus during this meeting and he did not undertake an inspection of the 50th Street facility before submitting the application.

In any event, GuideOne issued both the CGL and UMB policies to Adas Yereim, effective August 1, 2001, insuring 21 separate premises in a geographical territory stretching from Brooklyn to Philadelphia, Pennsylvania. The CGL policy contained the following provision:

G.    UNINTENTIONAL ERRORS OR OMISSIONS

Failure by you [the named insured] to disclose all hazards as of the inception date of the policy shall not prejudice you with respect to

---

[1] Goldstein actually submitted two applications, the initial one and then a corrected one, to GuideOne on behalf of Adas Yereim. The differences between these applications are immaterial since none related to coverage for the 50th Street facility.

[2] At his examination under oath, Framowitz testified that he only knew "that there were affairs [at Adas Terrace], that's it." Framowitz Dep. at 116:7-9.

the coverage afforded by this policy, provided such failure or any omission is not intentional.

CGL Policy § 4(6).   Furthermore, both the CGL and UMB policies contained the following provision:

      a.   The statements in the Declarations are accurate and complete;

      b.   Those statements are based upon representations you made to us; and

      c.   We have issued this policy in reliance upon you [sic] representations

Id. at § 7(3).  The CGL policy was renewed annually three times and the UMB policy was renewed annually twice.  Adas Yereim paid total premiums of $262,729.07 over the four year life of the policies.

III.     *Loss Control Inspection*

GuideOne gathers information concerning an insured's risks initially through its sales agent and subsequently through loss control inspections and risk presentations.  On January 16, 2003, William Savage ("Savage"), a GuideOne inspector, performed a loss control inspection at the 50th Street property.  He met with Israel Stern ("Stern"), an administrator at the 50th Street school, who had been designated as Adas Yereim's "contact man" for the inspection, since he was the congregant who typically met with fire, health, and sanitary inspectors on behalf of Adas Yereim.

Savage testified that, at loss control inspections, he would give a risk management presentation, ask questions about the property's operations, and then do a walk-through survey.  He would explain the need for the insured to obtain certificates of insurance from entities operating on their premises, such as contractors.  Explained Savage:

The whole premise of the 45 minutes in the beginning is there are things that can happen by doing this, that you should have safeguards.  If it was disclosed that, yes, we have this or that, I would have to dig, delve, further into this, because my

> job, as being there, is to make sure the policyholder is insulated from the risk of the potential things you talk about.

Savage Dep. at 57:18-58:3.  He recalled asking Stern, in substance, "[d]o you loan, lease, sublet, anything like that to other organizations."  Id. at 62:12-14.  Savage testified that

> This question has to be answered, and that's one of the reasons I was there in the first place – I'm there to give information about risk potential from the outside world.  By having outside groups use your facilities, you're allowing an outside group to have control over facilities that you're not supervising.  Therefore, it presents risks.  That's why this whole thing came up with certificates of insurance, so that's why the question comes up, is the facility loaned, leased, or sublet to others, period.

Id. at 65:19-66:6.

In response, Stern told Savage that a state-licensed head start program with approximately 15 students leased one room at 50th Street.  Stern acknowledges that he did not inform Savage about the Deli Plus arrangement, but insists that he normally informs anyone inspecting the premises that he is unable to answer any questions about the facility and that any questions should be referred to the appropriate authority.[3]  There is no dispute, though, that during this loss inspection GuideOne, again, was not informed of the Deli Plus arrangement by Stern or anyone else.

IV.     *GuideOne's Practice and Procedure*

There is also no dispute that GuideOne specializes in insuring churches, synagogues and other faith-based institutions, including private schools, colleges, and not-for-profit senior living communities.  The parties agree too that it is not unusual for an outside caterer to use a religious facility to cater an event.  GuideOne plants a hedge, of course, contending common practice does not cover "the catering company [having] full reign to use the premises." Clark Dep. at 140:8-16.

---

[3] Stern could not recall specifically directing Savage this way during the 50th Street facility inspection, but maintains that he does indeed normally make these statements.  However, this testimony conflicts with other portions of Stern's testimony and with Savage's account of the inspection.

According to plaintiff's commercial underwriter for the Adas Yereim policies, Sue Clark, the norm "was more a controlled environment, and [GuideOne was] able to control the exposures that existed." Id.

More importantly, GuideOne claims that it did have a custom and practice with respect to catering arrangements like the one Adas Yereim had with Deli Plus, which was to issue a policy at a higher premium and require the insured to structure a mechanism by which liability for accidents occurring at the caterer's events would be passed through to insurance coverage obtained by the caterer (a "pass through"). As proof of compliance, the insured would be obligated to provide a certificate of insurance from the caterer's insurance carrier that named the landlord congregation as an additional insured on the caterer's policy. In support of its contention, GuideOne offers two GuideOne documents: (i) an informational memorandum on indemnity explaining the need for an insured to obtain certificates of insurance from third-party contractors on the premises (the "Indemnity Memorandum"), see GuideOne Rule 56.1 Stmt. Ex. P; and (ii) a document used for underwriter training, entitled "lessor's risk," (the "Lessor's Risk Memorandum"), which states that an additional charge "should be made" when "the named insured owns premises and leases them to others." Id. at Ex. S. Goldstein testified, in addition, that GuideOne's normal upcharge in such cases was an extra premium of "about $200 per thousand square feet," yielding, in this case, approximately $480 per year in additional premiums for the 2400 square foot Adas Terrace facility. Adas Yereim counters that GuideOne has never declined to issue a policy to a religious institution that permitted an outside vendor to cater on its premises and notes that the additional $480 premium amounts to a paltry .7% of the yearly premium.

V.     *The Incident and Subsequent Lawsuit*

On December 14, 2003, Sysche Heschel was attending a social function at Adas Terrace when he allegedly fell and sustained injuries that led to his death on December 23, 2003. On January 16, 2004, GuideOne received a letter from counsel for the Estate of Sysche Heschel, giving notice of the incident. Nearly a month later, on February 19, 2004, on a claims investigation questionnaire sent by Goldstein but returned to a claims investigator (the "Claims Questionnaire"), Adas Yereim indicated that

> Approx nine years ago the caterer was given exclusivity on catering the cong. and its members' functions. It seems that as time developed the caterer started using the hall for non-members as well. Since the caterer was taking care of the total cleaning and using the utensils etc. we did not stop him from doing so. Rabbi Lipshitz, our past president, made the arrangements with the caterer. Rabbi Lipshitz has since passed away.

Defs. Rule 56.1 Stmt. Ex. H.

Then, in response to a question in a May 3, 2004 letter from a GuideOne claims agent (the "May Letter"), Adas Yereim similarly noted that "approx ten years ago the caterer was given exclusive use of the party hall which enabled our members to get better terms when partying an event. As time went on, it seemed the caterer started catering non-congregation events." Id. at Ex. K. Before the year was out, GuideOne sued for breach, claiming Adas Yereim failed to cooperate meaningfully with its investigation of the Heschel claim.

On February 3, 2005, Adas Yereim produced for examination under oath (the "EUOs") three witnesses—Framowitz, Jerome Fischer (Adas Yereim's main contact with Deli Plus), and William Fischer, no relation, who was responsible for the finances of the 50th Street facility. The witnesses explained the relationship between Adas Yereim and Deli Plus. During his EUO, Jerome Fischer described it thusly:

> At the time [Adas Yereim] made a verbal understanding that we don't want anything to do with it. We will let [Deli Plus] handle the full functions. [Deli Plus] can, if [Deli Plus] want[s], rent it – [Deli Plus] can give it out for 360 days a

year if [Deli Plus] want[s] or 2 days a year.  It wasn't – We didn't want to have any control of that.  We didn't want to have anything to do with it.  We didn't want to be bothered with it.

Regarding the congregation's demand that Deli Plus provide it proof of its own insurance

coverage, he testified further that

> I remember mentioning to [Deli Plus] numerous times that the committee or, so to speak, the people in Adas Yereim are requesting that you submit your insurance and he had told us numerous times that he will do it, he will do it.  But as things go along, you know, you just – I'm a volunteer, I'm busy.  And so on.  We never saw any certificate from him.

On the same day the EUOs were taken, GuideOne generated an internal memorandum (the

"February Memorandum"), stating:

> The insured allowed a caterer to use the basement of this facility for private parties.  The carterer [sic] had carte blanche use of the facility.  Caterer had their own set of keys and rarely did insured even know when the parties were.  Insured has now hired a new caterer but has no contract of cert. of insurance with the new caterer.  Please review risk.

Defs. Rule 56.1 Stmt. Ex. O.  After the EUOs and creation of this memorandum, GuideOne

accepted premium payments from Adas Yereim on March 9, 2005, just as it had before.

Claiming to have completed its investigation into the Heschel incident, GuideOne

generated another memorandum, dated May 5, 2005 (the "May Memorandum"), laying out the

facts of Heschel's fatal accident.   Addressing the Deli Plus arrangement, the May Memorandum

presented the following investigatory finding:

> Apparently, the Congregation had transformed and/or constructed part of the premises into some sort of catering/meeting/dinning [sic] hall for the congregants to use.  This "Hall" has been used on several occasions in the past.  Deli Plus had exclusive rights to the catering of the events.  Deli Plus was supposed to "pay" the congregation for the use of the facility, but apparently was paying some of the executives of Adas Yereim in cash without the Congregations [sic] knowledge.

Id. at Ex. Q.  It memorialized further that

> 3 of the insured's representatives provided an examination under oath which revealed that Deli Plus has a long term verbal agreement with Adas Yereim to use the space for business and were paying the insured's [sic] "under the table". Deli Plus had use of the facility whenever they wanted and also had a key to the facility. At times the insured was not even present for the event or even knew that an event was taking place or had taken place. Further review of the file has revealed that GuideOne never knew about Deli Plus' operations and Adas Yereim has never placed GuideOne on notice of this "lessee" to the premises.

Id. GuideOne shortly thereafter amended its complaint in this action (on May 27, 2005) to disclaim coverage, contending that Adas Yereim's failure to disclose its relationship with Deli Plus constituted a breach of warranty under New York Insurance Law § 3106.[4] See Am. Compl. at ¶ 73. It then promptly accepted yet another premium from Adas Yereim on May 31, 2005.

Within 48 hours, however, on June 2, 2005, GuideOne mailed a notice of cancellation/non-renewal, which stated unequivocally that Adas Yereim's insurance policies would remain in force until their expiration date, August 1, 2005, but would not be renewed. GuideOne cited "claims history" as the basis for the cancellation. Ruchel Heschel filed a complaint based on her decedent's accident in New York Supreme Court, Kings County, on August 15, 2005. See Ruchel Heschel, as Adminstratrix of the Estate of Syshe M. Heschel v. Congregation Adas Yereim, et al., Index No. 24059/2005. On December 9, 2005, GuideOne filed a second amended complaint, asserting for the first time that the CGL and UMB policies should be declared void *ab initio*, pursuant to New York Insurance Law § 3105, based on Adas Yereim's purported material misrepresentations. See Sec. Am. Compl. at ¶ 78. In its answer, Adas Yereim counterclaimed for its own declaration stating that GuideOne was obligated to indemnify and defend Adas Yereim in the underlying state action. Plaintiff now moves in the alternative for relief in the form of an order either permitting it to disclaim coverage for the Heschel incident specifically or rescinding the CGL and UMB policies in their entirety.

---

[4] The parties do not contest the applicability of New York law.

Defendant Adas Yereim cross-moves for summary dismissal of the complaint and, joined by the other moving defendants, also moves for summary judgment on its counterclaim in the form of a declaration that GuideOne is obligated to indemnify and defend Adas Yereim in the state action.

## DISCUSSION

I. *Standard On Summary Judgment*

Under the Federal Rules of Civil Procedure, a court must grant summary judgment upon finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In assessing the merits of a summary judgment motion, "the court cannot try issues of fact but can only determine whether there are issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). In determining whether the moving party has met this burden, a court must construe all evidence in a light most favorable to the nonmoving party, resolving all ambiguities and inferences in its favor. Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

If the moving party makes a *prima facie* showing that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and put forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002). This means that the nonmoving party may not rely on "conclusory statements, conjecture, or speculation." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Ultimately, the court is left to decide "whether the evidence presents a sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.[5]

II. *Rescission and Estoppel*

Before considering the parties' sundry arguments as to any right plaintiff may have to disclaim liability for the Heschel claim, the Court will first determine whether GuideOne is entitled to seek rescission. Judgment for the insurance company on that basis ends all matters. In considering the issue, of course, the Court is mindful of the hoary maxim that "[a] court of equity is always reluctant to rescind, unless the parties can be put back in *status quo*. If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it." <u>Grymes v. Sanders</u>, 93 U.S. 55, 62 (1876).

Defendants have argued that GuideOne is estopped on its rescission claim because it 1) unreasonably delayed seeking rescission and 2) by still accepting premiums and also by sending Adas Yereim what amounted to a non-renewal notice after learning of the Deli Plus arrangement, GuideOne acted inconsistently with its demand to rescind the CGL and UMB policies. In a nutshell, through laches and inconsistent conduct, defendants argue, GuideOne has forfeited any right it may have had to rescind the CGL and UMB policies.

GuideOne counters, to be sure, that it sought rescission as soon as it had obtained all the information necessary to seek such relief in good faith. Timeliness is founded, GuideOne argues, on its late discovery that it was never told about "Adas Yereim's relationship with Deli Plus that gave Deli Plus exclusive, unlimited and unsupervised control over Adas Yereim's property" and that Adas Yereim failed to secure a "pass through mechanism." <u>See</u> Pl. Mem. in

---

[5] When faced with cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." <u>Heublein, Inc. v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993); <u>see also</u> CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998).

Supp. of Mot. for Summ. J. at 19.  GuideOne also claims support from two of its own business records.  The first is its Lessor's Risk Memorandum, which states that "[i]f the named insured owns the premises that are used or leased by others, there is an additional exposure for the named insured" and goes on to note that "[w]hen the named insured owns premises and leases them to others, our liability exposure is increased and a charge should be made."  The second is the Indemnification Memorandum, which states that "[t]he need for a pass-through mechanism arises…[when the] policyholder leases premises to others."  These records, however, do not show what if anything Adas Yereim communicated to GuideOne about the Deli Plus operation or, if it did so, when it did so; nor even did they show what and when any agent of GuideOne first came to know of it.

   *a.  When Did GuideOne Learn the Material Facts Concerning Adas Yereim's Arrangement with Deli Plus?*

   From any perspective, bickering about when GuideOne came to learn of the independent caterer's operation is at the heart of the case.  Defendants argue that Adas Yereim informed GuideOne of its arrangement with Deli Plus through the Claims Questionnaire, submitted around February 16, 2004, and again in the May 3, 2004 letter.  At the very least, they say, GuideOne must have learned the relevant facts at the EUOs, conducted in February, 2005.  GuideOne responds that these disclosures did not provide GuideOne with all the material facts, and indeed, that GuideOne did not learn everything it needed to know until it had completed its investigation in early May of 2005.[6]

   Metaphysical certitude not being a requirement, GuideOne's contention that it did not know and could not have known all the relevant facts until early May 2005 is thoroughly unpersuasive.  Knowledge of three facts was all that was needed for the rescission determination

_____

[6] GuideOne offers the May Memorandum as evidence of the approximate time period when it could fairly be said to have fully learned all the material facts.

GuideOne eventually made: 1) Adas Yereim had leased Adas Terrace to Deli Plus, 2) Deli Plus enjoyed unfettered access to Adas Terrace and 3) Adas Yereim had not secured certification of proper pass through insurance from the caterer. Even assuming, moreover, that the Claims Questionnaire and May 2004 letter together, and plaintiff does not deny receiving them, were insufficient to establish that GuideOne was on notice that Deli Plus had been given exclusive right to use Adas Terrace but had failed to procure the proper pass through insurance certificate (a rather large assumption), the EUOs unquestionably did. See discussion of the testimony of Jerome Fischer, supra at 8-9.

What's more, the February Memorandum, generated by GuideOne on the same day as the EUOs, acknowledged that plaintiff realized Deli Plus had "carte blanche" use of Adas Terrace. Finally, the May Memorandum itself, to which GuideOne clings as if imbued with some talismanic potentcy, states that "3 of the insured's representatives provided an examination under oath which revealed that Deli Plus has a long term verbal agreement with Adas Yereim to use the space for business and were paying the insured's [sic] 'under the table.'" Consequently, even if it was not aware in early 2004 that Adas Yereim had leased Adas Terrace to Deli Plus with an unusual amount of control, there is absolutely no triable issue as to the fact that GuideOne had clearly learned all it needed to know of this arrangement by February 2005.

Equally powerful is the very hollow ring of GuideOne's lament that it did not learn of the congregation's failure to secure the proper pass through insurance coverage from Deli Plus until May 2005. At his EUO, Jerome Fischer also testified:

> I remember mentioning to [Deli Plus] numerous times that the committee or, so to speak, the people in Adas Yereim are requesting that you submit your insurance and he had told us numerous times that he will do it, he will do it. But as things go along, you know, you just – I'm a volunteer, I'm busy. And so on. We never saw any certificate from him.

This testimony is anything but ambiguous—it makes perfectly clear that, although perhaps attempting to comply with GuideOne's pass through insurance requirement, Adas Yereim never did obtain a certificate of such insurance from Deli Plus and even admitted Adas Yereim's belief that Deli Plus had not sought the insurance. About this there is no triable issue: through the Claims Questionnaire, May letter, and EUOs, GuideOne had actual knowledge that Adas Yereim had leased Adas Terrace to Deli Plus and, with Jerome Fischer's EUO testimony, GuideOne had further learned that Adas Yereim had not satisfied its pass through insurance obligations. Perhaps there were disparate mysteries left unsolved until May, but GuideOne had unmistakingly learned everything it needed to know about the Deli Plus arrangement by February 2005. Indeed, the essence of the knowledge it had then is the proffered basis for the rescission claim it makes now.

Stated more critically, GuideOne fails to articulate a single material fact learned through the investigation allegedly completed in May that it had not learned by February. Clearly, the "investigation" was a fact-finding regarding the Heschel incident. It was an investigation that GuideOne was entitled to conduct but was also one that GuideOne has not even attempted to show netted a single additional detail relating to the congregation's lease of Adas Terrace to Deli Plus. GuideOne's investigation into the Heschel incident cannot excuse its failure to promptly act after learning the essential details of the Deli Plus lease arrangement, and which were completely unrelated to Heschel's on-premises injury and subsequent death.[7] See McGinnis v.

---

[7] GuideOne cites the Second Circuit's opinion in Republic to excuse its delay, arguing that it required approximately three months to investigate the Heschel claim. Assuming that GuideOne needed such time, Republic offers no refuge on the rescission claim. In Republic, the insurer amended its complaint in May 1989, but only after deposing an important witness in early 1989 and reviewing approximately 46,000 pages of deposition testimony over a year and a half period. See Republic Ins. Co., 77 F.3d at 53. Here, GuideOne deposed the key witnesses in February 2005, and was only required to review under 200 pages of deposition testimony and a handful of short insurance applications. (See GuideOne Rule 56.1 Stmt. Exs. B, C, J & K; Defs' Rule 56.1 Stmt. Ex. X). It is simply implausible to suggest that review of this information would require three months, especially when the review

Mandracchia, 291 A.D.2d 484, 485; 739 N.Y.S. 2d 160, 162 (2d Dep't 2002) (insurer's attempt to justify its delay on the ground that it had to investigate the incident further is "an insufficient excuse as a matter of law, as that investigation was unrelated to the reason for the disclaimer based on late notice and could have been asserted at any time"); see also City of N.Y. v. Northern Ins. Co. of N. Y., 284 A.D.2d 291, 292; 725 N.Y.S.2d 374, 375 (2d Dep't 2001) (noting that an insurer's defense that it required additional time to investigate was "insufficient excuse as a matter of law, as such an investigation was unrelated to the reason for the disclaimer and could have been asserted at any time").

   b.   *Is GuideOne Estopped From Seeking Rescission By its Seven Month Delay?*

   New York law is crystal clear on this point—when an insurer seeks to rescind a contract *ab initio* based on misrepresentations by the insured, it must promptly disaffirm the contract upon learning of the misrepresentations—and certainly it may not continue to derive benefit under it. See Sumitomo Marine & Fire Ins. Co. v. Cologne Reinsurance Co. of America et al., 75 N.Y.2d 295; 552 N.Y.S.2d 891; 552 N.E.2d 139 (1990). The Second Circuit, moreover, has pointedly and "categorically stated that '[any] action for rescission must be initiated without unreasonable delay.'" Ballow, Brasted, O'Brien & Rusin, P.C. v. Logan, 435 F.3d 235, 240 (2d Cir. 2006) (quoting Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 47 (2d Cir. 1991)). The Circuit's rule applies with even greater vitality in the insurance context due to the nature of the parties' obligations. Simply put, an insured has a compelling need to know whether it is covered under an existing insurance agreement. See Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996). An insured is therefore entitled to prompt notice of

---

yielded no additional material information concerning the alleged misrepresentations supposedly warranting rescission.

whether the insurer intends, upon gaining information of an alleged misrepresentation, to continue performance under the contract of insurance.

At the conclusion of the Heschel claim investigation, GuideOne filed an amended complaint, on May 27, 2005,[8] in which it advanced its cause that Adas Yereim's alleged misrepresentations constituted a breach of warranty pursuant to New York Insurance Law § 3106. And still, all that the amendment sought was a declaration of GuideOne's right to disclaim coverage for the Heschel incident under both the CGL and UMB policies, but *did not* seek to rescind either policy. See Am. Compl. pg. 15. It was not until nearly seven months later, on December 9, 2005, that GuideOne again amended its complaint and this time claimed that Adas Yereim's failure to disclose its relationship with Deli Plus "constitute[s] material misrepresentations under N .Y. Insurance Law § 3105 and breaches of warranties under N .Y. Insurance Law § 3106,"[9] see Second Am. Compl. ¶ 78, now seeking as relief, not only the right to disclaim coverage for the Heschel incident but also to void the CGL and UMB policies *ab initio* "based on Adas Yereim's *material non-disclosures*."[10] Id. at pg. 17 (emphasis added). Incredibly, it was not until approximately ten months after the latest date GuideOne learned of the material facts concerning Adas Yereim's alleged misrepresentations did it finally seek to exercise its claimed right to void its policies.[11] With respect to GuideOne's right to rescind, only Rip Van Winkle slept longer. Such delay is unreasonable as a matter of law. See Saitta v. New

---

[8] The parties had stipulated on May 5, 2005 to allow GuideOne until May 30, 2005 to amend its complaint.

[9] In all versions of its complaint, GuideOne also claimed that Adas Yereim breached its duty of cooperation under the CGL and UMB policies. On March 29, 2007, GuideOne withdrew its cooperation claims, leaving only its claims to disclaim coverage for the Heschel incident and to void the CGL and UMB policies retroactively based solely on Adas Yereim's alleged misrepresentations at the time of the actual application for insurance. See Minute Entry for Proceedings Before the Court on 3/29/2007, GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim et al., 1:04-cv-5300 (ENV)(JO).

[10] Notably, nowhere in its motion for summary judgment does GuideOne argue that relief is warranted under § 3106—indeed, GuideOne never points to a single warranty purportedly breached by Adas Yereim.

[11] Even accepting its contention that it only had sufficient information to act after completing its investigation in early May, 2005, GuideOne still waited approximately seven months to exercise its right to rescind. While shorter than a ten month delay, a seven month delay *after the self-proclaimed completion of its investigation* is equally inexcusable.

York City Transit Auth. et al., Nos. 4355, 25773/03, 42160/05, 2008 WL 4659437, at *1 (1st Dep't Oct. 23, 2008) (holding that, after learning the information justifying rescission, an insurer's four month delay in seeking it was unreasonable as a matter of law).

Nonetheless, concluding that the delay is unreasonable as a matter of law does not end the Court's inquiry. New York courts have required insureds seeking to estop their insurer from rescinding insurance policies to demonstrate not only an unreasonable delay but also prejudice resulting from that delay. See, e.g., Precision Auto Accessories, Inc. v. Utica First Ins. Co., 52 A.D.3d 1198; 859 N.Y.S.2d 799 (4th Dep't 2008); Legum v. Allstate Ins., 33 A.D.3d 670; 821 N.Y.S. 2d 895 (2d Dep't 2006); United States Fid. & Guar. Co. v. Weiri, 265 A.D.2d 321; 696 N.Y.S.2d 200 (2d Dep't 1999); Fairmont Funding v. Utica Mut. Ins. Co., 264 A.D.2d 581; 694 N.Y.S. 2d 389 (1st Dep't 1999). "To show prejudice, the insured must show reliance and a change in position resulting from the delay." Mutual Benefit Life Ins. Co., et al., v. Lindenman, 911 F. Supp. 619, 627 (E.D.N.Y. 1995) (quoting William Crawford, Inc. v. Travelers Ins. Co., 838 F. Supp. 157, 160, aff'd, 23 F.3d 663 (2d Cir. 1994)). Whether the degree of prejudice allegedly suffered by the insured warrants estoppel is generally a question of fact. See Guberman v. William Penn Life Ins. Co., 146 A.D.2d 8; 538 N.Y.S.2d 571, 573 (2d Dep't 1989).

Here, Adas Yereim claims that it has been prejudiced because GuideOne's tardy disclaimer prevented it from "procuring substitute coverage that would have otherwise covered it during this period." However, GuideOne informed Adas Yereim on June 2, 2005 that its coverage would remain in effect until its scheduled expiration on August 1, 2005. There can be no prejudice going forward from the scheduled date of expiration. Furthermore, if defendants assert that they were prevented from securing coverage for the period preceding expiration of the policy and including the Heschel incident, then they merely reiterate the generalized "prejudice"

that any insured would suffer if proven to have made material misrepresentations during the application process. Without more, Adas Yereim cannot fairly be said to have been prejudiced as a matter of law, and consequently, GuideOne cannot be adjudged estopped at this stage of the litigation based on its delay in seeking rescission. But, there is more.

    *c. Does GuideOne's Acceptance of Premiums and Sending of a Cancellation/Non-Renewal Notice Estop it From Seeking Rescission?*

    While its delay does not foreclose it, GuideOne's actions leading up to its belated attempt to seek rescission unmistakably do vitiate as a matter of law any right GuideOne may have had to rescind. New York courts have held specifically that "[w]here an insurer accepts premiums after learning of an event allowing for cancellation of the policy, the insurer has waived the right to cancel or rescind." Cont'l Ins. Co. v. Helmsley Enters., Inc., 211 A.D.2d 589, 589; 622 N.Y.S.2d 20, 20 (1st Dep't 1995) (citing Zeldman v. Mut. Life Ins. Co., 269 A.D. 53; 53 N.Y.S.2d 792 (1st Dep't 1945)); see also Scalia v. Equitable Life Assurance Soc'y of U.S., 251 A.D.2d 315, 315; 673 N.Y.S.2d 730, 731 (2d Dep't 1998) ("It is well settled that the continued acceptance of premiums by the carrier after learning of facts which allow for rescission of the policy, constitutes a waiver of, or more properly an estoppel against, the right to rescind."). Similarly, where an insurer who is aware of the insured's material misrepresentations elects to send a notice of non-renewal stating coverage will remain effective through the end of the policy, but will not be renewed, the insurer is estopped from seeking rescission. See Stein v. Sec. Mut. Ins. Co., 38 A.D.3d 977, 979, 832 N.Y.S.2d 679, 681 (3d Dep't 2007) ("As defendant elected to cancel plaintiffs' policy rather than rescind it . . . the policy was in full force until the cancellation notice's stated effective date . . ..").

    Laying GuideOne's conduct alongside these principles necessarily leads to the conclusion that GuideOne has forfeited its right to rescind. For well after the Deli Plus arrangement was

brought to full light in February 2005,[12] GuideOne accepted premiums from Adas Yereim on March 9 and May 31, 2005. Then on June 2, 2005, approximately four months after the EUOs, GuideOne sent a cancellation/non-renewal notice to Adas Yereim clearly stating that the CGL and UMB policies would remain in effect until August 1, 2005. This conduct entirely inconsistent with rescission only underscores and punctuates GuideOne's laches. Even more dispositively, it waives any right to rescission.

Rather lamely, GuideOne does not challenge that it accepted these premiums or sent the cancellation/non-renewal notice, but simply reiterates that it could not fairly have been expected to seek rescission until after it completed its investigation in May 2005, and that as a result, it cannot be said to have accepted "premiums," but rather only "a" premium. Notwithstanding the sophistry of the debate about whether a single "premium" transgression is sufficient in the face of cases involving the acceptance of plural "premiums", the fact is the Court has determined that GuideOne was fully apprised of the material facts allegedly warranting rescission by February 2005, not May, and accepted more than one premium with such knowledge. Not surprisingly, GuideOne has not offered, anyway, a single case highlighting the distinction that it seeks to make—that it is permissible for an insurer to accept just one premium after gaining knowledge of the facts justifying rescission. Simply, GuideOne's acceptance of even one premium with knowledge of facts justifying rescission is sufficient to foreclose its right to rescind, particularly when coupled with its subsequent election to cancel, rather than rescind.

Finally, GuideOne rushes to point out that it has actually sought not only to rescind the CGL and UMB policies but also to disclaim coverage for the Heschel incident as two distinct causes of action under § 3105. Estoppel, GuideOne argues, does not apply to actions to disclaim

---

[12] Again, the Court determined that there is no triable issue concerning GuideOne's knowledge by February 2005 of the facts justifying a good faith rescission claim. But, there is abundant evidence that GuideOne had such information long before that time.

coverage.  As support GuideOne points to the language found in § 3105(b): "No material misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material."   It insists that it first asserted this right to disclaim coverage through its May 27, 2005 amended complaint and then repeated it in its second amended complaint alongside its request for rescission.  Consequently, GuideOne argues, even if it is estopped from seeking rescission, it is still entitled to disclaim coverage for the Heschel incident on the basis of the same misrepresentations.

GuideOne cites no case law, however, for its proposition that § 3105(b) authorizes it to seek to disclaim coverage for the Heschel incident specifically on the basis of misrepresentations made more than two years earlier during the application phase.  In point of fact, § 3105(b) lacks any language creating causes of action relating to misrepresentations by an insured or defining any defenses to such an action.  This silence does not impede rescission rights, of course, for an insurer's right to seek to void an insurance contract *ab initio* derives from the common law.  See Aetna Casualty & Surety Co. v. O'Connor, 8 N.Y.2d 359; 207 N.Y.S.2d 679; 170 N.E.2d 681 (1960).  But, there is no right at common law to selectively disclaim various obligations under an insurance contract that otherwise remains in full force and effect.

To be sure, an insurer is empowered by New York law to disclaim coverage for particular occurrences without having to establish its right to rescind or to invalidate the entire contract. Generally, these actions are linked to particular provisions in the contract, such as a policy exclusion or a timely notice and cooperation clause.  See, e.g., North Country Ins. Co. v. Tucker, 273 A.D.2d 683, 684; 709 N.Y.S. 2d 255, 257 (3d Dep't 2000); see also Harary v. Allstate Ins. Co., 988 F. Supp. 93, 102 (E.D.N.Y. 1997).[13]  GuideOne has cited no case allowing an insurer,

---

[13] See fn. 9, supra.  Interestingly, GuideOne has never sought to disclaim for the Heschel incident because Adas Yereim failed to secure a "pass through mechanism."  Presumably (and none are cited), no provision of the actual

all the while collecting premiums and electing to keep its policy in effect until its established

expiration date, to disclaim coverage for a particular occurrence falling under that policy on the

basis of the insured's misrepresentations during contract formation.  Where an insurer complains

solely about misrepresentations during contract formation, as GuideOne does here, New York

law arms the insurer only with the hatchet of rescission and not the scalpel of unilateral

modification.  By its inconsistent conduct, GuideOne has forfeited its right to the hatchet—its

only weapon under § 3105(b).  Lacking a scalpel and having surrendered the hatchet, GuideOne

stands without means to avoid its contractual obligations, and since there is no triable issue of

material fact presented about that, judgment must be, and hereby is, for defendants.

III. *Attorneys' Fees*

Adas Yereim also seeks to recover attorneys' fees.  Under New York law, an insured is

entitled to recover attorneys' fees associated with its successful defense against an insurer's

attempt to free itself from its policy obligations.  See U.S. Underwriters Ins. Co. v. City Club

Hotel, LLC et al., 3 N.Y.3d 592, 598; 789 N.Y.S.2d 470, 478; 822 N.E.2d 777, 780 (2004).

Since GuideOne sought to escape its coverage obligations and Adas Yereim has successfully

defended against that action, Adas Yereim is entitled to recover its attorneys' fees.

**IV. Conclusion**

For the foregoing reasons, plaintiff's motion for summary judgment is denied and

defendants' cross-motions for summary judgment are granted.  GuideOne is obligated to

indemnify and defend Adas Yereim in the Heschel lawsuit, and to pay attorneys' fees to Adas

Yereim for the defense of this action.  Defendant Adas Yereim is directed to file a supplemental

affidavit and memorandum of law in support of its application for attorneys' fees on or before

---

CGL and UMB policies actually required the insured to do so.  Accordingly, any failure to obtain such insurance
coverage from Deli Plus was not a breach of the policy and would not support disclaimer on such traditional ground.

January 30, 2009.  Plaintiff shall file any papers in opposition on or before February 10, 2009.

There shall be no reply.

      SO ORDERED.


DATED: Brooklyn, New York
       January 15, 2009


                    _____/ENV_____
                    Eric N. Vitaliano
                    U.S.D.J.