UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GUIDEONE SPECIALTY MUTUAL
INSURANCE COMPANY,

                         Plaintiff,

- against -

CONGREGATION ADAS YEREIM, DELI
PLUS, INC., LUTHERAN MEDICAL CENTER,
JOHN WERDYKER, RUCHEL HESCHEL,
individually and as Administratrix of the Estate of
Sysche M. Heschel,

                       Defendants.

------------------------------------------------------------X

MEMORANDUM AND ORDER

1:04-cv-5300 (ENV)(JO)

VITALIANO, D.J.

     Congregation Adas Yereim ("Adas Yereim") has submitted an application for attorneys' fees in connection with its defense of the action brought by its insurer, GuideOne Specialty Mutual Insurance Company ("GuideOne"), to disclaim premises liability coverage. It seeks an award of $175,153.72, including $3997.47 in litigation expenses. For the reasons stated below, the Court awards attorneys' fees to Adas Yereim in the amount of $90,794.80, which includes $1692.74 in costs.

BACKGROUND

     Familiarity with the facts is presumed.[1] The short of it is, GuideOne brought this action for declaratory judgment, pursuant to 28 U.S.C. §§ 1332 and 2201, on December 6, 2004 (and which it later amended twice), seeking to disclaim coverage for any liability attributable to Adas

---

[1] For a more detailed discussion of the facts, background, and controlling law, see the Court's Memorandum and Order denying Plaintiff GuideOne's motion for summary judgment and granting Defendants' cross-motions for summary judgment. GuideOne Specialty Mutual Ins. Co. v. Congregation Adas Yereim, No. 04-CV-5300 (filed Jan. 20, 2009).

1

Yereim stemming from a December 14, 2003 accident. The disclaimer was based on various alleged breaches by the insured of its obligations under the contracts of insurance. Ultimately, on April 27, 2007, GuideOne moved for summary judgment. Adas Yereim cross moved for summary judgment in its favor. The Court denied GuideOne's motion and granted Adas Yereim's cross motion. GuideOne was also ordered to pay attorneys' fees to Adas Yereim for its defense of this action since, under New York law, an insured is entitled to recover attorneys' fees associated with its successful defense against an insurer's attempt to free itself from its policy obligations. See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y.3d 592, 598; 789 N.Y.S.2d 470, 473; 822 N.E.2d 777, 780 (2004).

DISCUSSION

The Second Circuit has provided considerable guidance to district courts in determining the reasonableness of a request for attorneys' fees. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110 (2d Cir. 2007), amended on other grounds by 522 F.3d 182, 190 (2d Cir. 2007); see also Simmons v. N.Y. City Transit Auth., 575 F.3d 170 (2d Cir. 2009). Generally, a district court must, first, decide whether to apply the in-district hourly rate or a requested out-of-district rate. See Arbor Hill, 493 F.3d at 119. Once the district court has decided which hourly rate applies, it must, second, calculate "the presumptively reasonable fee,"[2] that is, "'what a reasonable paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'"

---

[2] The panel in Arbor Hill used the term "presumptively reasonable fee" and abandoned use of the term "lodestar" in its analysis of attorneys' fees. See 493 F.3d at 117-18. The "lodestar" was, traditionally, "the product of the attorney's usual hourly rate and the number of hours worked." Simmons, 575 F.3d at 174; see also Arbor Hill, 493 F.3d at 114 (citing Lindy Bros. Builders, Inc. v. Am. Radiator and Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973)). But, of course, as the Supreme Court has more recently reiterated, a "reasonable hourly rate", rather than an attorney's usual hourly rate, is the relevant variable. See, e.g., Blum v. Stenson, 465 U.S. 886, 888, 897 (1984); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Arbor Hill, 493 F.3d at 115-16. Against this backdrop, the Court is content to adopt the term "presumptively reasonable fee" as well, although it notes that the substance of the lodestar approach has been subsumed within the standard for the presumptively reasonable fee. See Arbor Hill, 493 F.3d at 117-18; see also id. at 115 (citing Blum, 465 U.S. at 898-900; Hensley, 461 U.S. at 433-34).

Simmons, 575 F.3d at 174 (quoting Arbor Hill, 493 F.3d at 112, 118). This second step requires the district court "to bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Arbor Hill, 493 F.3d at 117. Once the district court has set the reasonable hourly rate, it should use that rate to calculate the presumptively reasonable fee. Id. at 118. "[T]he amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. Within these parameters, a district court's choice of rates is well within its discretion. Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994); see also Arbor Hill, 493 F.3d at 117.

So guided, the Court turns to the instant application.

I. Appropriate Documentation for an Award of Attorneys' Fees

In the Second Circuit, "[a]ll applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983); see also McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990); Carey, 711 F.2d at 1147-48); Nero v. Law Office of Sam Streeter, No. 08-CV-1459, 2009 U.S. Dist. LEXIS 84702, at *24 (E.D.N.Y. Sept. 10, 2009) (citing Carey, 711 F.2d at 1154).

Adas Yereim has included contemporaneous time records in its "Detail Fee Transaction Report", (Supplemental Declaration in . . . Support of Defendant Congregation Adas Yereim's

Application for Attorneys' Fees ("Epstein Decl.") Ex. A), and the Court is satisfied that this documentation itself is generally appropriate.

II.     Forum Rule

In this case, Adas Yereim asks the Court to apply an out-of-district rate—that is, the rate that Adas Yereim's counsel, Snitow Kanfer Holtzer & Millus, LLP ("SKHM") charges in Manhattan (the Southern District). Specifically, Adas Yereim requests that SKHM receive its Manhattan hourly rates of $450 for Snitow, $375 for Epstein, $300 for Trunkes, and $55 for Bryan and Mills-Richardson. Adas Yereim also requests "that this Court take judicial notice of the close proximity of Manhattan to Brooklyn . . . and therefore take into consideration the reasonableness of rates for Manhattan law firms." (Adas Yereim Br. at 7.)

The Second Circuit follows the "the forum rule", which the Supreme Court developed in Blum v. Stenson. 465 U.S. 886. According to that rule, district courts should generally use "the prevailing [hourly rate] in the community"—i.e., the district where the district court sits—in calculating the presumptively reasonable rate. Arbor Hill, 493 F.3d at 118 (internal quotation marks and citation omitted); see also Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). A district court may apply an out-of-district hourly rate "if it is clear that a reasonable, paying client would have paid those higher rates," Arbor Hill, 493 F.3d at 119, although the court of appeals has emphasized "that deviation from the forum rule is only appropriate 'in the unusual case[]' in which a litigant demonstrates that her selection of counsel was 'reasonable under the circumstances.'" Simmons, 575 F.3d at 175 (citing Arbor Hill, 493 F.3d at 119).

Simmons provides a "roadmap" for district courts to follow when analyzing a request for an award for higher out-of-district rates. Id. at 176. "[A] district court must first apply a

4

presumption in favor of application of the forum rule." Id. at 175. To overcome that presumption, a party seeking higher out-of-district fees must "persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result" in light of objective factors, such as counsel's special expertise in litigating a particular type of case. Id. at 175-76. The mere proximity of the districts in question and nebulous notions of "prestige and fame" are not enough to assist a party in overcoming this presumption. Id. at 176. In addition, a party must establish that retaining in-district counsel would have produced "a substantially inferior result." Id. For instance, a party could present evidence that in-district counsel were unwilling, unable, or too inexperienced to take the case. Id. (citing In re "Agent Orange" Prod. Liability Litig., 818 F.2d 226, 232 (2d Cir. 1987)).

Here, Adas Yereim has not established that retaining SKHM was likely to produce a substantially better result, nor has it established that retaining in-district counsel would have produced a substantially inferior result. As Simmons teaches, Manhattan's close proximity to Brooklyn is not enough to allow the Court to apply SKHM's Manhattan rates. Similarly, Adas Yereim has not established that Epstein and Trunkes (and Snitow), all be they "experienced, well-seasoned attorneys" who work at a "well-respected" firm, (Adas Yereim Br. at 7), have any special expertise that bears on this case. Finally, Adas Yereim has not established that counsel in the Eastern District of New York were unwilling, unable, or too inexperienced to defend the action brought by GuideOne and which, essentially, was a relatively standard action to disclaim insurance coverage. See Simmons, 575 F.3d at 176. Thus, Adas Yereim has not overcome the presumption in favor of in-district rates. For this reason, the Court declines Adas Yereim's

request that the Court use what defendant perceives to be the higher, Manhattan rate in calculating an award of attorneys' fees.

III.     Presumptively Reasonable Fee

In determining the presumptively reasonable fee, district courts "should consider, among others, the Johnson factors,"[3] as well as the fact that a client "might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." Arbor Hill, 493 F.3d at 118. District courts should also "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Id. These considerations per force bear upon the Court's analysis.

1.      Hourly Rate

The Court must now determine what the prevailing Eastern District of New York hourly rate should be for Snitow and Epstein, partners at SKHM; for Trunkes, an associate of the firm; and for Bryan and Mills-Richardson, paralegals of the firm. GuideOne cites to cases in which hourly rates in the Eastern District have been stated as ranging from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants. See, e.g., Larsen v. JBC Legal Group, P.C., No. 04-CV-4409, 2008 U.S. Dist. LEXIS 106607, at *6 (E.D.N.Y. Dec. 18, 2008) (citation omitted); Access 4 All, Inc. v. 135 West Sunrise Realty Corp., No. 06-CV-5487, 2008 U.S. Dist. LEXIS 91674, at *17-*18 (E.D.N.Y.

---

[3] The twelve Johnson factors for establishing a reasonable fee, as laid out in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93 (1989), are as follows:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 493 F.3d at 114 n.3.

Sept. 30, 2008). Similar ranges have been stated by other courts in the Eastern District. See, e.g., Melnick v. Press, No. 06-CV-6686, 2009 U.S. Dist. LEXIS 77609, at *32 (E.D.N.Y. Aug. 28, 2009) ("A review of recent cases in this District indicates that the range of appropriate billing rates is $200-$375 per hour for partners and $100-$295 per hour for associates." (citations omitted)); Duverger v. C & C Duplicators, Inc., No. 08-CV-0721, 2009 U.S. Dist. LEXIS 53859, at *7 (E.D.N.Y. June 25, 2009) ("'Overall hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants.'" (citation omitted)); Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 281 (E.D.N.Y. 2008) (stating the same rates in an indemnification case (citing Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007))).

a. Partners Snitow and Epstein

The Court sets Snitow's and Epstein's hourly rate at $275.[4] This rate reflects both partners' years of litigation experience (at least 25 years apiece). See, e.g., Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc., No. 03-CV-3333, 2007 U.S. Dist. LEXIS 7692, at *6 (E.D.N.Y. Feb. 2, 2007) (taking a partner's 25 years of commercial litigation experience into account in setting an hourly rate). This rate also reflects SKHM's small size (10 to 12 attorneys). (See Epstein Decl. at 2; see also Chambless, 885 F.2d at 1058-59 (affirming an award of attorneys' fees where the district court set the hourly rates by reference to small to medium-sized firms and suggesting that "smaller firms may be subject to their own prevailing market rate"); Vilkhu v. City of New York, 06-CV-2095, 2009 U.S. Dist. LEXIS 73696, at *9 (E.D.N.Y. June

---

[4] See McDonald, 450 F.3d at 96-97 (noting that a district court may use its knowledge of the relevant market in determining a reasonable hourly rate); Miele v. New York State Teamsters Conf. Pension & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987) (stating that a district court may rely in part on its own knowledge of hourly rates charged in the community and is not limited to the submitted evidence of prevailing rates).

25, 2009) ("The size of the firm may also be considered as a factor in determining the hourly rate, 'primarily due to varying overhead costs.'" (quoting Cioffi v. N.Y. Cmty. Bank, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006))).)

Other factors that courts in the Eastern District have considered when applying higher-than-usual hourly rates are inapplicable to this case. See, e.g., In re Gilat Satellite Networks, Ltd., No. 02-CV-1510, 2007 WL 2743675, at *15, *17 (E.D.N.Y. Sept. 18, 2007) (finding that hourly rates of $325 for associates and $725 for partners, while "high," were not out of the ordinary when billed by a major law firm in an "undoubtedly complicated" securities litigation class action); Rubie's, 2007 U.S. Dist. LEXIS 7692, at *6 (awarding a partner an hourly rate of $340-$370—which the court found to be "on the high side"—where, in addition to having 25 years of commercial litigation experience, the partner had (1) argued numerous times before the Southern and Eastern Districts, as well as the Second Circuit and (2) been appointed Special Master in major federal cases); see also, e.g., Tu v. Tad Sys. Tech. Inc., No. 08-CV-3822, 2009 U.S. Dist. LEXIS 82410, at *28-*29 (E.D.N.Y. Sept. 9, 2009) (applying attorneys' fees at the higher range of rates in the Eastern District because "intellectual property matters require specialized knowledge and courts in this district recognize[] higher than average hourly rates for experienced intellectual property attorneys"). Adas Yereim, however, has provided no evidence that the underlying dispute, managed by a small law firm, was so complicated as to warrant application of a higher-than-usual fee; that the breadth of Snitow's and Epstein's litigation experience is out of the ordinary; or that this case, an insurance-coverage dispute, required any specialized knowledge (or, even if it had, that Snitow and Epstein brought any such specialized knowledge to the table).

8

For a firm of SKHM's size, using the prevailing hourly rates in this district, on a matter requiring no specialized knowledge (beyond litigation experience), and where there is no evidence that Snitow and Epstein had any specialized expertise, beyond that pertaining to general civil litigation, a rate of $275 an hour is reasonable.

b. Associate Trunkes

The Court finds that the appropriate hourly rate for Trunkes, given the prevailing hourly rate here, is $125. This amount fairly reflects Trunkes' experience, including seven years as a court attorney in the Appellate Division, (Adas Yereim Br. at 8), and is in keeping with the fact that, during the pendency of this case, Trunkes was a very junior associate at a small firm. See, e.g., Chambless, 885 F.2d at 1058-59.

c. Paralegals Bryan and Mills-Richardson

The Court will apply SKHM's hourly rate of $55 for paralegals Bryan and Mills-Richardson, a rate that is well within the prevailing paralegal hourly rates in the Eastern District.

2. Hours Expended

"In determining the number of hours reasonably expended for purposes of calculating the [presumptive reasonable fee], the district court should exclude excessive, redundant or otherwise unnecessary hours." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley, 461 U.S. at 433-35, 440). A district court does this, of course, by looking to its own familiarity and experience with a particular case; its experience generally; and to the parties' evidentiary and other submissions and arguments when calculating the number of hours reasonably expended. Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). In this regard, GuideOne argues that the time entries submitted by the attorneys for Adas Yereim are unreasonable because they are facially excessive, vague, and/or otherwise improper.

9

a. Excessive Hours

According to SKHM's Detail Fee Transaction Report, SKHM is seeking fees for 466.8 hours of attorney work and 1.75 hours of paralegal work. (Epstein Decl. Ex. A.) The record reflects that counsel drafted, inter alia, an answer; papers on the dueling motions for summary judgment (in opposition to plaintiff and in support of their own cross motion); correspondence to the Court; discovery requests; responses to GuideOne's document requests; and deposition summaries. SKHM also took or defended five depositions.

Overall, the Court finds that much of the time claimed by SKHM is reasonable. The Court agrees with GuideOne, however, that the time claimed in connection with the summary judgment motion practice is excessive. SKHM has billed for 158.2 hours for this category of work, which, while effective, essentially involved piggyback submissions to its co-defendants' papers. (See Declaration of Leonard F. Lesser ("Lesser Decl.") Exs. E-H, M; see also id. Exs. C-D.) A reduction is warranted.

"[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citing Carey, 711 F.2d at 1146). Here, the Court finds a 50% reduction in the number of hours billed by SKHM for its work in connection with the summary judgment motions to be appropriate.

b. Vague or Imprecise Entries

In submitting time entries, "'[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures.'" Baruch v. Healthcare Receivable Mgmt., Inc., No. 05-CV-5392, 2007 U.S. Dist. LEXIS 80429, at *16 (E.D.N.Y. Oct. 30, 2007) (quoting Aiello v. Town of Brookhaven, No. 94-

CV-2622, 2005 U.S. Dist. LEXIS 11462, at *9 (E.D.N.Y. June 13, 2005)). It is, however, required that counsel provide enough information so that a court can review the reasonableness of the number of hours entered. See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987). Entries that are too vague for a precise review may be reduced. See, e.g., Carey, 711 F.2d at 1146 (noting that, in "cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. These courts have endorsed percentage cuts as a practical means of trimming fat from a fee application." (citations omitted)); C.B. ex rel. W.B. v. N.Y. City Dep't of Educ., No. 02-CV-4620, 2006 U.S. Dist. LEXIS 68649, at *45-*46 (E.D.N.Y. Sept. 25, 2006) (citing cases from this district in which fee awards were reduced by percentage amounts ranging from 15% to 40% because of vagueness of time entries); Morin v. Nu-Way Plastering, Inc., No. 03-CV-405, 2005 U.S. Dist. LEXIS 37867, at *10-*11 (E.D.N.Y. Dec. 19, 2005) (reducing an award of fees by 25% for vagueness because, "[a]lthough the time records [we]re sufficiently detailed to meet the requirement of contemporaneous time records under the loadstar method, they [we]re not so detailed as to provide the court a basis for concluding that there was no duplication of efforts . . . or that all entries were necessary to the litigation.").

GuideOne argues that SKHM's time entries are vague and improper, especially for the period from August 28, 2006 to March 19, 2007. (GuideOne Br. at 13.) It highlights, in particular, SKHM's 186.4 hours of "vague 'review' tasks", (id. at 14), and asks that an across-the-board reduction be made to Adas Yereim's award of attorneys fees. As a related consequence of the vagueness, GuideOne contends, it is unclear how much time SKHM's attorneys spent defending against GuideOne's claim vis-à-vis how much time was spent

11

asserting Adas Yereim's counterclaims.[5] Similarly, GuideOne claims impropriety in (1) billing for unnecessarily duplicative work, e.g., moving to dismiss a complaint that it had already answered[6], (see Lesser Decl. Exs. L, R) and (2) billing "clerical"-level work performed by Epstein at an attorney's rate.

As the Court has noted, much of the SKHM effort on behalf of Adas Yereim was reasonable. Still, the excessive billing that was reflected in the charges ascribed to work in connection with the summary judgment motion practice for which the state court tort plaintiff had the laboring oar, does leak over into the charges for the balance of the defense. Whether supported by vague references to "review" tasks or unnecessarily duplicative work, such as moving to dismiss a previously answered complaint, a further percentage reduction in fees is appropriate.

Before that mathematical computation is made, though, a more discrete reduction is in order. Adas Yereim admits that some of SKHM's hours were spent on developing appropriate counterclaims for relief. (See Adas Yereim Br. at 9; Epstein Decl. at 7.) GuideOne argues that 12.3 hours of time were, by the terms of the time record entries themselves, (GuideOne Br. at 18), spent on such purposes and are not compensable under New York insurance law. See footnote 5, supra. In its review, the Court counts 8.4 hours of such non-compensable time, all billed by associate Trunkes. As a result, a reduction of $1050 is made.

The remaining discrete objection interposed by GuideOne is not susceptible to such a reduction. Its specific rate inflation claim with respect to work performed by Epstein arises out

---

[5] This is important because "[i]t is the rule in New York that [recovery of attorneys' fees] may not be had in an affirmative action brought by an assured to settle its rights, but only when he has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559, 564, 389 N.E.2d 1080, 1085 (1979) (citations omitted); see also F.H. Krear & Co., 810 F.2d at 1265 (reducing an award of fees where the time entries were too vague for the Court to determine how much time was spent on a claim versus how much was spent on counterclaims).
[6] The motion papers were stricken since Adas Yereim had had no right to move to dismiss. See docket entry # 68.

of time spent on multiple tasks. For example, several of the entries that GuideOne highlights for a reduced, paralegal rate (phone conversations with a court reporter) show that Epstein was on the phone not only with the court reporter, but also with opposing counsel and/or officials of Adas Yereim. (GuideOne Br. at 16-17.) Having a paralegal or an administrative assistant on these kinds of calls, or billing Epstein at a paralegal's lower rate for such work, would have been inappropriate in these instances. Thus, the Court will let stand these time entries at Epstein's attorney rate.

In the end, obviously, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). Here, Adas Yereim was successful in the battle for summary judgment, and, accordingly, its attorneys' compensation should reflect this. Leavened by such success, but taking into account the vagueness of some of the entries still at issue, as well as the Court's accompanying sense that the entries suggest a modicum of unnecessary expense, the balance of the overall fee sought by Adas Yereim, that is, not including hours billed in connection with the actual litigation of the summary judgment motions, is to be reduced by 15%.

IV. Calculations

Thus, implementing the determinations made by the Court, the award of attorneys' fees is calculated as follows:

| Attorney/Paralegal | Reasonable Hourly Rate | Hours Billed | Fee |
|---|---|---|---|
| Snitow | $275.00 | 0.8 | $220.00 |
| Epstein | $275.00 | 413 | $113,575.00 |
| Trunkes | $125.00 | 44.6 | $5575.00 |

13

| Bryan | $55.00 | 0.5 | $27.50 |
| Mills-Richardson | $55.00 | 1.25 | $68.75 |
| | | **Total** | $119,466.25 |

| Additional Reduction | Calculation | Deduction |
|---|---|---|
| Billing for work not related to the summary judgment motion | $83,911.25 x 0.15 | $12,586.69 |
| Billing for work related to the summary judgment motion | $35,555.00 x 0.50 | $17,777.50 |
| | **Total Deductions** | $30,364.19 |
| | **Total Fees** | $89,102.06 |

Total: $89,102.06

As a result, the Court finds that the total amount of fees to be awarded to Adas Yereim is $89,102.06.

V.     Costs

"Costs are ordinarily recoverable if they are 'incidental and necessary to the litigation.'" See Baruch, 2007 U.S. Dist. LEXIS 80429, at *21-*22 (quoting Tips Exports, Inc., v. Music Mahal, Inc., No. 01-CV-5412, 2007 U.S. Dist. LEXIS 84399, at *29 (E.D.N.Y. Mar. 9, 2007)). Certain costs, such as photocopying and postage, for example, are routinely incurred and awarded. See id. at *22 (citation omitted). Adas Yereim seeks $3997.47 for them.

To begin, the Court agrees with GuideOne that the December 5, 2005 double entry for "Court Reporter Fees", (Epstein Decl. Ex. B), should be corrected. Accordingly, this item is reduced by $612. More troublesome with respect to the balance of the claimed costs is that, though Adas Yereim has submitted an itemized list of attorneys' costs, it has not provided any supporting documentation. See Baruch, 2007 U.S. Dist. LEXIS 80429, at *22. Because Adas Yereim has failed to meet its burden of demonstrating costs, and "without more information with

14

which to judge the reasonableness of such expenditures," N.Y. City Dep't of Educ., 2006 U.S. Dist. LEXIS 68649, at *58; cf. Baruch, 2007 U.S. Dist. LEXIS 80429, at *22, the Court will reduce the balance of the costs to be awarded by 50% of the amount requested. In line with this analysis, the Court awards total costs of $1692.74.

CONCLUSION

For the reasons stated above, judgment is to be entered in favor of defendant Adas Yereim and against GuideOne awarding Adas Yereim attorneys' fees and costs in the amount of $90,794.80, of which $89,102.06 is an award of attorneys' fees and the balance of $1692.74 is awarded as costs.

SO ORDERED.

DATED: Brooklyn, New York
September 29, 2009

s/Eric N. Vitaliano
Eric N. Vitaliano
United States District Judge

15